UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



**FILED**

SEP 16 2019

Clerk, U.S. District Court
Texas Eastern

| | |
|---|---|
| **WANDA L. BOWLING** §<br>*Plaintiff* §<br>§<br>**vs.** §<br>§<br>**LESTER JOHN DAHLHEIMER, JR.** §<br>**AND** §<br>**LESTER JOHN DHALHEIMER, SR.** §<br>**(Estate Executrix Elizabeth Dahlheimer)** §<br>**PAULETTE MUELLER(in her Official** §<br>**And  Individual Capacity)** §<br>**JUDGE PIPER MCCRAW(in her Official**§<br>**And Individual Capacity)** §<br>**GREG WILLIS(in his Official and** §<br>**Individual Capacity)** §<br>**CRAIG A. PENFOLD(in his Official** §<br>**and Individual Capacity)** §<br>**JUDGE DAVID EVANS(in his Official** §<br>**and Individual Capacity)** §<br>**LISA MATZ CLERK OF THE COURT** §<br>**5TH DISTRICT COURT OF APPEALS** §<br>**(in her official and individual capacity)** §<br>**RHONDA CHILDRESS-HERRES(in her** §<br>**Official and Individual Capacity)** §<br>*Defendants* § | **Civil Action no. 4:18-CV-00610**<br><br><br><br><br><br>**Jury Trial Requested** |

## PLAINTIFFS SECOND AMENDED COMPLAINT

**Comes now** Wanda Bowling, files this Second Amended Complaint pursuant to Rule

15(a)(1)B in the interest of justice.

This is served on Lester John Dahlheimer Jr., Elizabeth Dahlheimer(executrix to Lester

John Dahlheimer Sr. estate), Paulette Mueller, Piper McCraw, Greg Willis, Craig Penfold, David

Evans, and Rhonda Childress for violating Plaintiff's constitutional rights and their participation

in conspiracy to unlawfully seize property, misc. assets, forgery, fraud, cover up of unlawful

conduct, tampering with evidence, and ONGOING threat tactics to bully Plaintiff into quiet submission.

## JURISDICTION

1.    Personal Jurisdiction is proper in this court as Plaintiff resides in the Dallas metro area, Plano, Texas.

2.    Plaintiff brings this case under subject matter pursuant to Title 42 United States Code 1983 Civil Action for Deprivation of Rights, Title 42 United States Code 1985 Conspiracy to Interfere with Civil Rights, 28 U.S. Code § 1356 - Seizures not within admiralty and maritime jurisdiction, 28 U.S. Code § 1343 - Civil rights and elective franchise, 28 U.S. Code § 1367 - Supplemental jurisdiction and Title 28, U.S.C. § 754 and 959(a), and the overarching 28 U.S C. §1331.

3.    Additionally, Plaintiff brings this case for violations of the 4th Amendment-Guarantee from Unlawful Search and Seizure, 5th Amendment-Protection of Rights to Life, Liberty and Property, 9th Amendment-Life Liberty and Pursuit of Happiness, and the 14th Amendment-Rights to Citizenship.

## PARTIES

4.    Wanda Bowling, Plaintiff, is a former spouse of Lester John Dahlheimer. Her current residence is 4517 Hallmark Dr., Plano Texas in Collin County, Texas.

5.    Lester John Dahlheimer Jr., Defendant, is the former spouse of Wanda Bowling. He currently resides at 5445 Caruth Haven, #1128, Dallas, Texas in Dallas County Texas.

6.     Lester John Dahlheimer Sr., Estate, Defendant used his estate as collateral in a fraud scheme to steal property from Wanda Bowling and resides at 5303 Briartree, Dallas, Texas 75248. Executrix is Elizabeth Dahlheimer, wife of Lester John Dahlheimer, Sr.

7.     Paulette Mueller, Defendant, served as Mr. Dahlheimer's attorney. Ms. Mueller is an attorney for Underwood Perkins at 5420 LBJ, #1900, Dallas, Texas 75240.

8.     Piper McCraw, Defendant, serves as a Judge in the Collin County Courthouse at 2100 Bloomdale Rd., #30014, McKinney, Texas 75071.  Judge Piper McCraw served as the judge in the lawsuit between Wanda Bowling and Lester J. Dahlheimer, Jr. and Lester J. Dahlheimer Sr.(now deceased)

9.     Greg Willis, Defendant, serves as the Collin County District Attorney located at 2100 Bloomdale Rd., #100, McKinney, Texas  75071.

10.    Craig A. Penfold, Defendant, served as a Court Appointed Receiver from Chicago Title. He is located 5950 Sherry Ln, #220, Dallas, Texas in Dallas County Texas.

11.    Rhonda Childress, Defendant, served as a Court Appointed Receiver from Coldwell Banker Apex Realtors

12.    David Evans, Defendant, served as one of the active appellate Judges at the 5th District Court of Appeals in Dallas, Texas in Dallas County.

13.    Lisa Matz Clerk of the Court – 5th Court of Appeals served as the Appellate Court, Defendant, in Dallas, Texas Dallas County.

## BACKGROUND SUPPORTING COMPLAINT ALLEGATIONS

14. Wanda Bowling and Lester Dahlheimer were married for 10 years. Mr. Dahlheimer heavily tasked the marriage monetarily with his refusal to obtain gainful employment, child support, and $139K custody battle, his multiple contempt of court actions, as well as lawsuits intertwined with fraud(now known at the time of marriage).

15. Mr. Dahlheimer also admittedly had a trust fund of "over $10,000,000.00" for which he claimed he had no access to assist in the mounting debt for which Plaintiff's income and savings paid.

16. In 2014 Plaintiff purchased a new property with her separate funds.

17. Plaintiff filed for Divorce in March of 2015 for violence and adultery. Mr. Dahlheimer had lived in the new property for only 9 months.

18. In an effort to provide financials for her attorney the Plaintiff embarked on a journey to restore emails, files, and hard drives of old computers. Plaintiff discovered Mr. Dahlheimer had forged her name on deed transfers of her separate property to himself in Georgia, forged her name on misc. property contracts, forged insurance proceeds, and used Plaintiff's S Corporation for business purposes(unknown impact).

19. It was also discovered that the Dahlheimers(Lester John Dahlheimer Jr. and Lester John Dahlheimer Sr.) used their multimillion-dollar estate to siphon equity out of Plaintiff's properties and attempt to take ownership. Plaintiff is missing $90K of equity from a property in Georgia.

20. Chicago Title was involved in several of those transactions including a false affidavit of title in 2007 and 2013.

21.     Also discovered was Dahlheimer Jr. forged Plaintiff's signature on a purchase contract in

collusion with Plaintiff's buyer's agent Lee Walla for Plaintiff's property at 4517 Hallmark Dr.

in Plano, Texas(property purchased with Plaintiff's separate funds) causing a $70,000.00 in

loss(court records available).  Lee Walla was subpoenaed 3 times for deposition and never

showed.  Both Dahlheimer Jr. and Paulette Mueller discouraged Ms. Walla to sit for the

depositions.

22.     Total dollar for dollar damages exceed $500,000.00 from the Dahlheimer's criminal acts.

23.     Plaintiff pursued discovery, but was met with little cooperation from opposing counsel,

Paulette Mueller, Mr. Dahlheimer, and Judge McCraw who denied Plaintiff's motion to compel

without being heard.  McCraw actively obstructed Plaintiffs attempts to bring the criminal

evidence into court and testify to it.

24.     Paulette Mueller, Dahlheimer's attorney, actively participated in the criminal

conspiracies with the Dahlheimer's of real estate fraud, embezzlement, extortion, unlawfully

penetrated Plaintiff's bank account, unlawfully penetrated Plaintiff's property, created materially

false accusations for the purpose to wrongfully incarcerate Plaintiff, fostered false testimony,

tampered with witnesses and participants of crime, declined to produce requested discovery

documents, tampered with Plaintiff's evidence(on the stand absconding with material evidence),

filed frivolous pleadings and lawsuits causing Plaintiff to spend thousands of dollars on meritless

defense, directly threatened Plaintiff, brutalized Plaintiff's attorneys, had ex parte

communication with Judges, and ex parte with the clerk(while playing musical chairs with the

scheduled hearings).

25. In response to Plaintiff's efforts to seek remedy in a court of law, Mr. Dahlheimer vandalized Plaintiff's residence, threatened her constantly, usurped all joint moneys to prevent her from getting adequate counsel, and stalked her. Judge McCraw, in conspiracy with others, fostered the activity issuing orders to unlawfully take Plaintiff's property, denying Plaintiff from her own separate funds, denying motions not heard, refusing to hear motions, and issuing orders that ultimately threatened Plaintiff's liberty and right to live in peace.

26. Plaintiff had two protection orders against Mr. Dahlheimer. Thereafter, Dahlheimer was found to have been stalking Plaintiff in church for a period of 7 months(unbeknownst to Plaintiff). After Plaintiff's pastor enlightened Plaintiff, Dahlheimer was arrested there on the church property. While Dahlheimer faced incarceration by yet, again, violating a protection order, McCraw ignored the offense and refused to protect Plaintiff. McCraw responded by dismissing the second Protection Order against Dahlheimer and attaching one against Plaintiff over a Mueller/Dahlheimer surprise no evidence accusation.

27. Plaintiff learned soon thereafter, Greg Willis, District Attorney of Collin County, had immediately expunged Dahlheimer's arrest record for violating the protection order to stay away from Plaintiff.

28. Plaintiff endeavored to protect herself with pleadings to compel more discovery, motions for contempt, emergency requests for funds from her accounts(for which Mr. Dahlheimer encumbered) to hire adequate counsel, filed application for additional physical protection, and attempted to present the forgery and fraud in the court, only to experience Judge Piper McCraw, in conspiracy with others, intentionally obstructing Plaintiff's attempts at every juncture. Most efforts were denied before being heard or simply ignored.

29.     In response to the obstruction Plaintiff requested Judge Piper McCraw's recusal.

30.     Without any due process of the Collin County Administrative Judge selecting an

unbiased Judge and sending a notice of selection of Judge to hear McCraw's refusal, a hearing

for recusal was set for Dec. 4, 2015. There was absolutely no notice of the recusal hearing.

31.     Three days prior to McCraw's recusal hearing, Dec. 1, 2015, Plaintiff arrived into an

unfamiliar court for which she was summoned. The unsuspecting request did not communicate a

purpose for the appearance. Upon Plaintiff's arrival the District Attorney unlawfully accused

Plaintiff of stealing Dahlheimer's "gun". The district attorney tried to incarcerate her.

32.     The gun in question had previously been purchased in Plaintiff's name exclusively and

was registered to Plaintiff's name exclusively in Georgia under her personal CHL.

33.     The threat of the false accusation and incarceration by District Attorney, Greg Willis,

came upon the sunrise of Judge McCraw's recusal hearing. Greg Willis and Piper McCraw have

a history of collusion in corruption together(2011).

34.     At the recusal hearing it appeared McCraw selected her own Judge. This lack of due

process was repeated for a second motion to recuse Judge McCraw where the same unknown

judge presided. Both recusals were DENIED, both of which Plaintiff never received notice of

either hearing.

35.     Dahlheimer, who stood to face criminal charges and pay significant damages, in

conspiracy with Paulette, Mueller, proceeded to brutalize Plaintiff covering her with no evidence

false accusations(felonious level) for which Plaintiff properly proved its falseness. Regardless,

Judge Piper McCraw allowed the no evidence malicious prosecution to penalize Plaintiff into

submission and loss.

36.     Judge McCraw actively prevented Plaintiff from using her personal funds and other assets to retain adequate representation, consistently denied Plaintiff's pleadings for which were not heard, denied setting hearings, denied presentation of forgery and fraud, denied allowing financial presentation(including separate property ownership), and acted in collusion with the forgery and fraud of the Defendants. Some of the fraud is directly connected to Judge McCraw's orders.

37.     Additionally, Judge McCraw, actively in conspiracy with opposing counsel Paulette Mueller, tampered with evidence(on record in a hearing: Reporters Record available).

38.     In May 2016 Dahlheimer lost his summary judgment due to an aggressive attorney representing Plaintiff's. He submitted proof that Plaintiff owned 98% of the subject property for which Dahlheimer endeavored to take. Plaintiff's win was predicated on her proof of ownership of her separate property.

39.     Subsequently, and to end all, McCraw held her own recusal hearing and final bench Trial without notifying the Plaintiff. Without the Plaintiff's appearance, Judge McCraw sanctioned Plaintiff, issued default judgements, including a Divorce Decree where McCraw awarded the Defendant, Mr. Dahlheimer, much of what was left of Plaintiff's separate property(July 2016) and 90% of the Community leaving Plaintiff was nearly nothing.

40.     Judge McCraw also ordered Plaintiff's property to be seized and disposed regardless of Plaintiff's attorney providing proof to McCraw that Plaintiff owned 98% of the property interests by her separate property. Plaintiff was kicked out of her property 7/19/2016 via order.

Plaintiff's Second Amended Complaint                                    Page **8** of **53**

41.    Losing everything Plaintiff had earned in 35 years of working, Plaintiff was ready to peacefully go away after the default judgment and losing her home, but Mueller and Dahlheimer were not satisfied with the winning vengeance in court.

42.    Within a week of the decree's finality Mueller and Dahlheimer filed a massive frivolous lawsuit disguised as a "Motion for Enforcement" that was full of falsifications and endeavored for Plaintiff's incarceration.  Because Judge McCraw had demonstrated absolutely no judicial integrity, Plaintiff had no choice, but to escalate.  Plaintiff filed an appeal.  The so-called "Motion for Enforcement" had no validity and was solely meant to brutalize Plaintiff.

43.    In addition to the kick out Order in the decree Judge McCraw appointed Chicago Title's Craig Penfold, family friend to the Dahlheimers, as Receiver to seize and dispose of Plaintiff's property.  It then became clear who had participated in the fraud of the Dahlheimer's embezzlement of Plaintiff's Georgia property(2007, 2013).

44.    Mr. Penfold did not hesitate to seize the property, gouge it, and attempt to help himself to some of the equity of the property.   Craig Penfold, Receiver, proceeded to execute large unnecessary projects on the Texas property that severely decreased the value of the property(estimate of $80,000.00) and absorbed $87,000.00 of insurance proceeds.

45.    Even though there was a stay upon an appeal, Penfold continued to unlawfully seize equity and dispose of the Plaintiff's property.  Plaintiff was forced to come to the Chicago Title's office by court order to sign the closing documents of her property.

46.    In the task of closing the sale of the property Penfold self-appoint himself as Title Company and Closing Attorney.    Penfold attempted to get Plaintiff to sign papers to hold him harmless as Receiver, Attorney, and Title Company.  Penfold attached $143,000.00 of expenses

against the property of which $111,000.00 was creative/fraud expenses and expenses outside of his authority. This clearly disposed of the remainder of all Plaintiff's equity and interest in the property. Plaintiff left without signing. Thereafter, Craig Penfold pursued Plaintiff and repeatedly threatened her by phone, filed frivolous pleadings in McCraw's court and lied in court.

47.     The outside of Plaintiff's property appeared to be declining(no yard service, pool full of algae, newly refurbished porch destroyed, trees down).

48.     Plaintiff had filed her Emergency Motion to Stay Pending Appeal to take her property back and preserve it.

49.     Judge McCraw's clerk refused to set a hearing for the Emergency Motion to Stay Pending Appeal. Plaintiff then appealed to the Appellate court which in turn denied the motion and ORDERED the Trial Court to hear Plaintiff's Emergency Motion to Stay Pending Appeal. Trial court was forced to set a hearing and GRANTED the Emergency Motion to Stay Pending Appeal.

50.     Plaintiff's Emergency Motion to Stay Pending Appeal asked for (1). Stay the Final Divorce Decree by a roll back to Status Quo of the Rule 11 Agreement giving Plaintiff back exclusive use and possession of her property. 2. Return insurance proceeds to Plaintiff so she can fix the damages(hail damage) to the property. 3. Vacate the entire Receiver Order inclusive of the forced sale of the property. 4. Be reimbursed for the damages to the property while in the possession of the Receiver. The motion was GRANTED however damages requested for Receiver's damages were denied.

51.     Even though the STAY was GRANTED McCraw violated her own order and denied
Plaintiff entry into her property and denied the insurance proceeds to care the for damages.
McCraw stated it wasn't within her "jurisdiction" to allow Plaintiff entry even though the STAY
PENDINT APPEAL was McCraw's Order.

52.     Within 6 days of granting the STAY Paulette Mueller filed motions in the Appellate court
deceiving the court into believing the STAY was not granted. McCraw conspired with this false
scheme. Regardless of their efforts, the Appellate Court issued an ORDER for the Trial Court to
"**preserve**" Plaintiff's property.

53.     Regardless of the GRANTED Stay, the appellate jurisdiction over subject matter, and the
direct ORDER from the Appellate Court to preserve the property, Judge McCraw proceeded to
unlawfully violate all the above and reissued the new orders to unlawfully seize the property
again(while the Stay Pending Appeal was in effect). McCraw issued another order to dispose of
the property, further McCraw appointed another Receiver, Rhonda Childress Herres. McCraw's
behavior stunned attorneys whom Plaintiff sought for help. McCraw had clearly stepped outside
her jurisdiction and violated clearly established law.

54.     The Receiver, Rhonda C. Herres declined to care for the failing property. However, Ms.
Herres allowed strangers to party overnight in the residence which reaped an incredible amount
of damage. Both dishwasher and disposal were clogged with broken "shot" glasses, the pool
equipment was damaged, someone had taken a hammer to the external cupping of the pool, and
the wooden porch was cracked in several places. Damages are articulated in Plaintiff's Appeal
in the 5th District Court of Appeals.

55.     In May 2017 Plaintiff took back possession of the vacant and deteriorating property.

56.     Within a couple of weeks of Plaintiff taking back her property 5/3/2017 she received a phone call on her cell phone from a person at 972-816-8256 stating he was a Plano police officer and he needs to speak with me. He and a tall redhaired female arrived at Plaintiff's residence and Plaintiff invited them in. The male police officer began threatening Plaintiff saying, "you better leave this residence immediately or be incarcerated". Plaintiff asked for their identification for which neither provided and asked if they "had any police business" for which they could not articulate. Plaintiff told them to leave.

57.     Even though a STAY was in place Ms. Herres aggressively threatened Plaintiff, including bodily harm, to leave the property. Ms. Herres broke into Plaintiff's property while Plaintiff inhabited the property on several occasions and damaged the alarm system, cameras, disturbed the neighbors, and upset the HOA.

58.     Judge McCraw, outside of her jurisdiction again, threatened Plaintiff with an Ex Parte TRO(6/2017). A TRO is not legal in Texas to kick an owner of a property out of their residence. Ms. Herres sent texts and emails threatening to have officials physically remove Plaintiff from her residence. This is all taking place while a Stay Pending Appeal was in effect.

59.     As of now Plaintiff's property has several counts of criminal charges and torts associated with it(Sales Contract forgery 70K damages, missing insurance proceeds 87K, insurance proceeds check forgery 24k, damages from gouging/Receiver 100K, vandalism, break-ins, damages from lack of care during vacancy, unlawful seizure and disposal orders). The property possessed a great deal of evidence and grounds for the offenses. The cover up of offenses spread and the force to dispose of the property became more reckless.

60.     As time progressed Plaintiff challenged the unlawful conduct. The more Plaintiff challenged the misconduct, the more misconduct occurred. The more the misconduct, the more individuals participated in covering it up.

61.     An Appellate Opinion was issued 11/2017 by the Honorable Judge David Evans. The Opinion appeared to protect the lawless Judge McCraw and immaturely admonished Plaintiff. Plaintiff challenged the Opinion stating either the Judge grossly misstated the record or there was a defect in the record(gave the Judge a gracious out).

62.     To prepare for a Rehearing Plaintiff physically traveled to the appellate court and asked for a copy of all appellate records. Plaintiff learned that the clerk records she paid to have transferred, have receipts by the Appellate court, and can visually see the records posted, suddenly disappeared from the record. These were records that supported Plaintiff's Appellate Brief

63.     The following day Plaintiff made a second trip to the appellate clerk of the court who intently asserted the two large clerk records(87 megabytes) did not exist. Plaintiff motioned the Appellate court to correct the records for a proper rehearing. Plaintiff made a third trip to the appellate court to talk to this clerk again but was faced with a girl who called herself "Denise" who refused to assist in identifying this clerk. As recent as 5/2019 Plaintiff found a photo of Lisa Matz 5th District Clerk of the Court of Appeals(facebook) and has identified "Denise" as Lisa Matz who is now realized as actively participated in the coverup of missing records in the Appellate Court.

64.     Judge David Evans denied the motion to correct the records and Lisa Matz of the Fifth District Clerk of the Court of Appeals never responded to Plaintiff's request.

65.     These records were the bulk of evidence that proved the lawlessness of Judge McCraw, Mueller, Penfold, Willis, and the Dahlheimers in Plaintiff's appeal. This lack of records thwarted a Rehearing of the gross misstatements of Judge Evans Opinion, thwarted Plaintiff's right to appeal, and thwarted any future defense which was exhausted 6/15/2018. With absent evidentiary records there was no true litigation that can be claimed in the Appellate court. State court remedy was thwarted. Texas Supreme Court simply "Denied" a petition.

66.     As recent as July 2018 Lester Dahlheimer and Rhonda Childress were caught trying to steal equity from Plaintiff's property via the mortgage company. The Mortgage company called Plaintiff to tell her of the endeavor. The Mortgage company denied their attempts and sent Plaintiff the documentation of Defendants request.

67.     Since July 2018 Defendants Dahlheimer, Mueller, and Herres have filed vexatious lawsuits full of baseless allegations threatening Plaintiff with incarceration. Plaintiff had previously filed her first Original Complaint in August of 2018 in this federal court holding Defendants accountable for their offenses. In the process of threatening Plaintiff into submission, Defendants successfully stole what was left of Plaintiff's separate property. The subject property is sold without Plaintiff's preview of any sales documents or signatures. It appears Dahlheimer refinanced the loan and possesses a final deed to the property. No proceeds were ever distributed to Plaintiff accordingly as to the decree. This is a $270,000.00 loss in total for Plaintiff.

68.     The judges participation of obstruction, failure to intervene, conspire to deprive rights, the threats made to Plaintiff, the ongoing forgery/fraud, collusion of gouging, the unlawful

fraudulent concealment, the impeded remedy in the higher state court, and the monetary loss has driven this Complaint into the Federal Court.

69.     The bulk of facts to support this federal case already exists in court records or business affidavits collected by Plaintiff's attorneys throughout this journey.

## PLAINTIFFS SECOND AMENDED COMPLAINT

## CLAIMS AGAINST PARTICIPANTS

### Honorable Judge Piper McCraw

70. Under Title 42 United States Code 1983 Civil Action for Deprivation of Rights, Plaintiff brings this lawsuit against Judge McCraw in her Official and Individual capacity.

### COUNT I AGAINST JUDGE MCCRAW
### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

71.     As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

72.     Plaintiff leverages Title 42 United States Code 1985 Conspiracy to Interfere with Civil Rights and the 9th Amendment as a guideline for the following offenses.

73.     McCraw, in conspiracy with others, obstructed justice intentionally to bring a favorable outcome to Plaintiff's adversaries by denying Plaintiff access to her own bank account for funds to retain adequate counsel allowing Dahlheimer's unlawful encumbrance of Plaintiff's funds.

74.    McCraw further obstructed justice by verbally cutting her off in court obstructing her to speak, actively denied Plaintiff's attempts to bring in the forgery, fraud, speak to the proof of ownership, denying discovery, and allowing proof of damages.

75.    In conjunction with defendant Mueller, Judge McCraw participated in tampering with governmental records.  McCraw gave a verbal order in court for Plaintiff NOT TO IDENTIFY her own Exhibits on record while Mueller was tampering with the Exhibits.

76.    Judge McCraw appointed Penfold as Receiver, an already identified participant in fraud with the Dahlheimers(Jr. and Sr.) who assisted the Dahlheimers in stealing equity in Plaintiff's Georgia property in 2007 and submitted fraud in 2013 in the sales of it.  McCraw's connection with this criminal transaction makes her a participant in same.  Penfold attempted the same criminal action by siphoning equity from Plaintiff's Texas property in 2016 thanks to McCraw's facilitation and appointment.

77.    Upon McCraw's first recusal hearing she leveraged her favor pool by engaging Greg Willis to use his position as District Attorney of Collin County to unlawfully threaten Plaintiff with a false allegation about "stealing a gun" with the intention to incarcerate her in hopes of oppressing Plaintiff from standing up for her rights.

78.    McCraw conspired with Mr. Dahlheimer, Ms. Mueller, Mr. Penfold, Greg Willis, and Ms. Childress to unlawfully threaten Plaintiff into submission.

79.    McCraw assisted Defendants in threatening Plaintiff by sanctioning her in the two trials held without Plaintiff.  The Orders have no explanation for the sanctions.

## COUNT II AGAINST JUDGE MCCRAW
## VIOLATION OF DUE PROCESS

80.     As described more fully above, Plaintiff incorporates and restates each of the above
paragraphs as if fully set forth herein.

81.     McCraw violates Plaintiffs 5th and 14th Amendment rights by exhibiting the lack of due
process when she denied hearings for Plaintiff's pleadings, denied setting times for
hearings(directing her clerk), intentional lack of notice to hinder Plaintiff's ability to retain legal
protection, and denying motions without being heard.

82.     McCraw held hearings with absolutely NO NOTICE to Plaintiff including her own
recusal hearings AND Plaintiff's divorce trial. The docket currently does not reflect when these
two trials actually took place, nor is there any existence of notice on record of these trials. There
does exist an agreement submitted to the court to move the Trial date from the 7/7/2016 date to a
future date. This is on record.

83.     McCraw refused to reduce oral rulings into a written Order allowing for appeal.

84.     No due process existed for both McCraw's recusal hearings. No record exists of
McCraw referring the case to an administrative Judge. No record exists of an Administrative
Judge selecting an unbiased Judge from a different jurisdiction. No record exists of any notices
to Plaintiff on these fronts or when these hearings were to occur. In both cases, the same Judge
from Van Alstyne appeared and had no interest in allowing Plaintiff the right to be heard.

85.     During an Appeal and after a Stay Pending Appeal was Granted Judge McCraw violated
her own Order and re-issued orders that were under the STAY. McCraw proceeded to preside
outside of her jurisdiction to forcefully seize more of Plaintiff's property in behalf of
Dahlheimer.

## COUNT III AGAINST JUDGE MCCRAW
## UNLAWFUL SEIZURE OF PROPERTY

86.     As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

87.     Plaintiff leverages the 4th and 5th Amendments and 28 U.S. Code § 1356 - Seizures not within admiralty and maritime jurisdiction, 28 U.S. Code § 1343 - Civil rights and elective franchise as constitutional causes for McCraw's intentional and willful unlawful seizure of Plaintiff's property.

88.     Judge McCraw was aware the Defendants lost their Summary Judgement to Plaintiff predicated on the fact that she proved she owned 98% of the interest in the property.  Regardless McCraw divested Plaintiff from her separate property interests in a Decree.

89.     Judge McCraw acted well outside of her jurisdiction when she continued to preside and issue orders that were now subject matter in the jurisdiction of the Appellate Court.  Further, Judge McCraw acted outside of her jurisdiction when she violated a direct order from the Appellate Court to preserve Plaintiff's property by issuing new orders to dispose of the property.

90.     Judge McCraw issued three(3) kickout Orders to wrongfully seize and dispose of Plaintiff's property in assistance with the perpetrators of fraud and forgery.

91.     Even outside of Texas law, McCraw ordered the unlawful Temporary Restraining Order to immediately kick out Plaintiff from her home during the STAY PENDING APPEAL.   The threats continued regardless of the STAY in place.  Judge McCraw repetitively violated clearly established law.

## COUNT IV AGAINST JUDGE MCCRAW
## FAILURE TO INTERVENE

92.     As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

93.     Plaintiff aggregates the above Count I, II, III with Count IV as these are all choices McCraw made in her failure to be the gatekeeper of justice.

94.     Judge McCraw denied protection of Plaintiff against a historically proven violent stalker, who had been removed from Plaintiff's environment by law enforcement several times and who had been arrested for violating Protection orders.  McCraw fostered Dahlheimer's pathology to continue threatening Plaintiff.

95.     McCraw is responsible for intentional infliction of emotional distress, interference with prospective economic advantage, obstruction of justice, and complete denial of due process.

96.     So far Judge McCraw has enjoyed the autonomy of acting outside of her jurisdiction with no accountability.

## COUNT V AGAINST JUDGE MCCRAW
## FRAUDULENT CONCEALMENT

97. As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

98. Judge McCraw actively concealed a granted Motion to Stay Pending Appeal from the Appellate Court to obstruct Plaintiff from further seeking a right to remedy and unlawfully seize property from Plaintiff.

99. In collusion with others fraudulently concealed her own fraud on the court and the fraud on the Appellate Court.

Plaintiff's Second Amended Complaint                                    Page **19** of **53**

## Honorable Judge Evans from the Appellate Court
## of the Fifth District Court of Appeals

100.    Under Title 42 United States Code 1983 Civil Action for Deprivation of Rights, Plaintiff

brings this lawsuit against Judge Evans in his Official and Individual capacity.

## COUNT I AGAINST JUDGE EVANS
## VIOLATION OF DUE PROCESS

101.    As described more fully above, Plaintiff incorporates and restates each of the above

paragraphs as if fully set forth herein.

102.    Evans violates Plaintiffs 5th and 14th Amendment rights by denying Plaintiff's motion to

correct the records when it was discovered the main files to support Plaintiff's brief were missing

from the appellate record(85 megabytes and $1,237.00 of transfer fees).  This completely

thwarted Plaintiff's appeal or Rehearing of Evans baseless Opinion.

## COUNT II AGAINST JUDGE EVANS
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

103.    As described more fully above, Plaintiff incorporates and restates each of the above

paragraphs as if fully set forth herein.

104.    Plaintiff leverages Title 42 United States Code 1985 Conspiracy to Interfere with Civil

Rights and the 9th Amendment as a guideline for the following offenses.

105.    It is outside Judge Evan's jurisdiction to decline a request for correction of the records. It was made clear in a motion that the main defense in the clerk records cost $1237.00 transferred from the Trial Court had disappeared as asserted by their appellate clerk of the court.

106.    Plaintiff requested correction directly to the clerk as well.  Judge Evans denied the request conveniently making it impossible for Plaintiff to eradicate his Opinion and cease his unfounded protection of Judge McCraw further proving Plaintiff's brief had merit.  This disappearance of records benefited both Judge McCraw and Judge Evans.  This equates to tampering with governmental records.

107.    Plaintiff's complaint against Judge Evans is participating in tampering with governmental records in conspiracy with others to thwart Plaintiff's Appeal.

### COUNT III AGAINST JUDGE EVANS
### FAILURE TO INTERVENE

108.    As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

109.    Plaintiff aggregates the above Count I and II with Count III as these are all choices Judge Evans made in his failure to be the gatekeeper of justice.

110.    Evans had no choice, but to assist and facilitate the correction of the records once he was made aware of the defect.  He chose to deny Plaintiff's motion instead of correcting in the interest of justice.  There is no discretion in the law to correct records.  Where there is no discretion a state official cannot act outside of his jurisdiction by denying the right to correct records.

111.    Plaintiff is also requesting damages for intentional infliction of emotional distress, interference with prospective economic advantage, obstruction of justice, and denial of due process.

## COUNT IV AGAINST JUDGE EVANS
## FRUADULENT CONCEALMENT

112.    As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

113.    Judge Evans actively concealed 87 megabytes of records that would implicate himself, Judge McCraw, Craig Penfold, Paulette Mueller, and the Dahlheimers.

114.    In collusion with others Judge Evans fraudulently conceal fraud on the court in the Trial Court and in the Appellate Court.

## Lisa Matz Clerk of the Court – Fifth District Court of Appeals

115.    Under Title 42 United States Code 1983 Civil Action for Deprivation of Rights, Plaintiff brings this lawsuit against the Lisa Matz Clerk of the Court Fifth District Court of Appeals in their official agency capacity.

## COUNT I AGAINST LISA MATZ OF THE
## FIFTH DISTRICT COURT OF APPEALS
## VIOLATION OF DUE PROCESS

116.    As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

117.    State agency, Fifth District Court of a Appeals has violated Plaintiffs 5th and 14th Amendment rights by ignoring Plaintiff's motion and requests to correct the records when it was discovered the main files to support Plaintiff's brief were missing from the appellate record(85

Plaintiff's Second Amended Complaint                Page 22 of 53

megabytes and $1,237.00 of transfer fees). This completely thwarted Plaintiff's appeal or Rehearing of Evans baseless Opinion.

118.    It is in the TRAP rules that the COA is the conservator of the records. They are responsible for auditing what is transferred in and keeping records maintained. When records go missing the rules clearly state it is their obligation to correct the record. There are commissions that enforce policy of the Court of Appeals that should have been engaged, i.e. their Judicial Committee of Information Technology.

119.    When there is no discretion there is no jurisdiction to deny corrections of an appellate record. Lisa Matz acted outside of her jurisdiction violating clearly established law.

## COUNT II AGAINST LISA MATZ OF THE
## FIFTH DISTRICT COURT OF APPEALS
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

120.    As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

121.    Plaintiff leverages Title 42 United States Code 1985 Conspiracy to Interfere with Civil Rights and the 9th Amendment as a guideline for the following offenses

122.    The actions of the Fifth District Court of Appeals obstructed Plaintiff's right to appeal, (support her brief) and a rehearing by refusing to correct the appellate record. This also protected Judge Evans from his baseless opinion which consequently protected Judge McCraw.

123.    In conspiracy with others, Lisa Matz declined to correct the records. Plaintiff's claim against the Lisa Matz of the 5th District COA clerk's office is they assisted in tampering with evidence and obstruction of justice.

### COUNT III AGAINST LISA MATZ OF THE
### FIFTH DISTRICT COURT OF APPEALS
### FAILURE TO INTERVENE

124.    As described more fully above, Plaintiff incorporates and restates each of the above
paragraphs as if fully set forth herein.

125.    Plaintiff aggregates the above Count I and II with Count III as these are all choices this
agency made which is a failure to intervene in the spirit of justice.

126.    Plaintiff had contact with an unnamed girl with dark hair, dark complexion and a girl who
impersonated a "Denise". Plaintiff called the clerk of the court and left a detailed message for a
Lisa Matz. Plaintiff received no successful response in assisting with correcting the records.

### COUNT IV AGAINST LISA MATZ OF THE
### FIFTH DISTRICT COURT OF APPEALS
### FRAUDULENT CONCEALMENT

127.    As described more fully above, Plaintiff incorporates and restates each of the above
paragraphs as if fully set forth herein.

128.    Lisa Matz Clerk of the Court was fully apprised of the requirement to correct the
Appellate records. The choice to deny correction of the record translates into the fraudulent
concealment equal to Judge Evans offense.

129.    In collusion with others Lisa Matz fraudulently conceal fraud on the court in the Trial
Court and in the Appellate Court.

### Greg Willis – Collin County District Attorney

130.     Under Title 42 United States Code 1983 Civil Action for Deprivation of Rights, Plaintiff

brings this lawsuit against Greg Willis in his official and individual capacity.

## COUNT I AGAINST GREG WILLIS
## DISTRICT ATTORNEY FOR COLLIN COUNTY
## VIOLATION OF DUE PROCESS

131.     As described more fully above, Plaintiff incorporates and restates each of the above

paragraphs as if fully set forth herein.

132.     Greg Willis, District Attorney of Collin County, has violated Plaintiffs 5th and 14th

Amendment rights by luring Plaintiff unsuspectingly into a court(unknowingly a criminal court)

misleading her to believe she did not need a defense attorney and then upon arrival proceeded to

accuse her falsely of an offense with any factual basis or probable cause and threaten her with

incarceration. Where there is no probable cause a prosecutor is in an investigative act.

Investigative acts are prosecutorial acts which nullifies immunity.

133.     It would seem law enforcement would have been involved prior to this event. They were

not involved.

134.     Willis false accusations of being divorced(which was false), and the Divorce Decree

stated a gun was awarded to Dahlheimer(no Divorce Decree, so the award was false) and

Plaintiff stole the gun(which was false), a gun registered in solely Plaintiff's name tied to a CHL

in Georgia, could easily have been investigated by obtaining a Divorce Decree which would

normally be available in the same building, yet did not exist because there was no divorce.

There was no probable cause to incarcerate or charge Plaintiff with criminal charges.

135.     It would seem that if their intention was to incarcerate Plaintiff immediately that charges would have presented to Plaintiff so she could have representation. Plaintiff was never presented with any clue of the charges.

136.     Since none of the above occurred with no probable cause it appears that this threat of immediate incarceration was investigative. Plaintiff deserved the due process of a visit from a law enforcement officer, formal notice to appear, formal allegations presented to her on paper, and time to prove their allegations were baseless. Instead none of this occurred.

## COUNT II AGAINST GREG WILLIS
## DISTRICT ATTORNEY FOR COLLIN COUNTY
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

137.     As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

138.     Plaintiff leverages Title 42 United States Code 1985 Conspiracy to Interfere with Civil Rights and the 9th Amendment as a guideline for the following offenses:

139.     Until this lawsuit did Plaintiff see the paperwork on the pending charges against her. It is now evident of the scheme to lure Plaintiff into a criminal court unsuspecting of the surprise intentions of incarcerating her. This paperwork clearly states that Dahlheimer claimed he was divorced from Plaintiff AND the gun belonged to him, both of which are false and easy to invalidate. The act of trying to incarcerate a civilian not under suspicion of any criminal act is not "advocacy" of prosecution, but clearly outside of that power or jurisdiction.

140.     Willis claims Dahlheimer's is divorced from Plaintiff which was false. It's absurd that the records to validate this claim as being false are at Willis's fingertips. In the same building

was his associate, Judge McCraw, was presiding over the divorce which had just begun.

McCraw is Willis's friend who exonerated Willis years before at the grand jury hearing for his previous alleged corruption. Did Willis not validate this?? Willis, in conspiracy with others, made a choice to threaten Plaintiff 3 days before Judge McCraw's hearing on her request for recusal filed by Plaintiff.

141. Willis's second claim that the gun belonged to Dahlheimer is false. It's not hard to ask for ownership papers. Plaintiff had Georgia registration, purchase receipts, and CHL paperwork for which Plaintiff's name was exclusively named on each document. Did Willis ask Dahlheimer for ownership papers?

142. With this point, it is hard to understand why Willis deceitfully lured Plaintiff into an appearance at a criminal court without any knowledge of the charges and litigate to incarcerate her unless there was some extrajudicial influence. The fact that this was 3 days before Judge McCraw's recusal hearing makes this a conspiracy to interfere. Willis and McCraw have been tied to corruption together before.

143. Upon litigating this very case in the federal court, Greg Willis has demonstrated his threatening nature in his multiple motion. Most of his motions threatened Plaintiff with sanctions.

## COUNT III AGAINST GREG WILLIS
## DISTRICT ATTORNEY FOR COLLIN COUNTY
## FAILURE TO INTERVENE

144. As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

145.     Plaintiff aggregates the above Count I, II, III with Count IV as these are all choices Willis made in his failure to be the gatekeeper of justice.

146.     Early in 2015 Plaintiff filed for a protection order against Dahlheimer directly with Willis's office. After Judge McCraw declined to protect Plaintiff, Willis also denied protection citing reason of "technicality". Plaintiff supplied copies of law enforcement paperwork where Dahlheimer was removed from Plaintiff's environment, admitted stalking her on the stand, and was arrested for violating a Protection Order. Willis failed to intervene to protect Plaintiff.

147.     Further, Plaintiff complained directly to the Greg Willis's office of McCraw's corruption in conspiracy Mueller/Dahlheimer. Plaintiff also expressed her disenchantment with Greg Willis as he refused to intervene when required. Greg Willis's "people" invited Plaintiff to come in to talk about it, however, it seemed more like a fact-finding mission on their part of what Plaintiff had as proof of Willis's collusion with McCraw.

148.     After meeting with Greg Willis's people, they agreed they would respond to 3 items that drove Plaintiff to her complaint: 1) what STANDING did the District Attorney have to surprise her with an accusation of a criminal offense and try to incarcerate her? 2) what was the "technicality" that hindered them from issuing a Protection Order(with all of the proof of historical violence submitted to them)? 3) what was the basis for expunging Mr. Dahlheimer's justified arrest?

149.     The Greg Willis's office never responded to any of Plaintiff's inquiries. Willis has no excuse to claim "it wasn't me" as he failed to supervise, intervene, and protect.

150.     Willis should be held responsible for malicious prosecutions, intentional infliction of
emotional distress, interference with prospective economic advantage(in conspiracy with others),
obstruction of justice, and denial of due process.

## COUNT IV AGAINST GREG WILLIS
## DISTRICT ATTORNEY FOR COLLIN COUNTY
## MALICIOUS PROSECUTION

151.     Greg Willis is guilty of malicious prosecution. There was no probable cause that could
possibly exist. Plaintiff's first realization that there was a criminal charge against her was when
she arrived for an appearance for which she received an unsuspecting invitation. Without due
process of law enforcement, investigation, a charge presented, and the adequate time to retain an
attorney is malicious prosecution. Upon discovery Plaintiff can prove all the elements exist for
this charge.

### Craig Penfold – Receiver appointed 7/19/2016 as officer of the court

152.     Under Title 42 United States Code 1983 Civil Action for Deprivation of Rights, 28 U.S.
Code § 1367 - Supplemental jurisdiction and Title 28, U.S.C. § 754 and 959(a.) Plaintiff brings
this lawsuit against Craig Penfold in his official and individual capacity.

## COUNT I AGAINST CRAIG PENFOLD
## VIOLATION OF DUE PROCESS

153.     As described more fully above, Plaintiff incorporates and restates each of the above
paragraphs as if fully set forth herein.

154. Craig Penfold has violated Plaintiffs 5th and 14th Amendment rights of due process. An order of Receivership is automatically STAYED during an appeal in the State of Texas. Penfold should have ceased his activities after 10/11/2016 when the appeal was filed. Instead Penfold continued his activities vigorously and tried to force the sales of the property by threatening Plaintiff via phone and in person. Then Penfold proceeded to file an application for sale with the court, added an intervenor, and pushed for a suit against Plaintiff. All these actions were violations of due process.

## COUNT II AGAINST CRAIG PENFOLD
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

155. As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

156. Plaintiff leverages Title 42 United States Code 1985 Conspiracy to Interfere with Civil Rights and the 9th Amendment as a guideline for the following offenses:

157. Craig Penfold, in conspiracy with others, verbally threatened Plaintiff into submission to sign documents to seize equity in the amount of 143,000.00 against her property.

158. Penfold appointed himself as Title Company and appointed himself as Real Estate attorney. Penfold had total unlawful control and did exactly what Mueller dictated.

159. Penfold's threats were ongoing and at the point of sale Plaintiff had to engaged law enforcement as Penfold's encroachment was alarming. His effort to assist Mueller and Dahlheimer to criminally steal equity violates her constitutional rights.

160. Penfold also made money for himself by physically gouging the property. Penfold left the property damaged and devalued.

161. Penfold is responsible for the unlawful intentional infliction of emotional distress, interference with prospective economic advantage, and obstruction of justice.

## COUNT III AGAINST CRAIG PENFOLD
## UNLAWFUL SEIZURE OF PROPERTY

162. As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

163. Plaintiff leverages the 4th and 5th Amendments and 28 U.S. Code § 1356 - Seizures not within admiralty and maritime jurisdiction, 28 U.S. Code § 1343 - Civil rights and elective franchise as constitutional causes for Penfold intentional and willful unlawful seizure of Plaintiff's property.

164. While a STAY was in place, Penfold, whose duties should have ceased, stepped outside of his duties, unlawfully seized, controlled Plaintiff's property, encumbered insurance proceeds, and damaged the property in the spirit of economic advantage.

## Rhonda Childress Herres -Receiver appointed as officer of the court after Motion to Stay
## Pending Appeal Order Court

165. Under Title 42 United States Code 1983 Civil Action for Deprivation of Rights, 28 U.S. Code § 1367 - Supplemental jurisdiction and Title 28, U.S.C. § 754 and 959(a.) Plaintiff brings this lawsuit against Craig Penfold in his official and individual capacity.

## COUNT I AGAINST RHONDA CHILDRESS HERRES
## VIOLATION OF DUE PROCESS

Plaintiff's Second Amended Complaint                    Page **31** of **53**

166.    As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

167.    Rhonda Childress Herres, has violated Plaintiffs 5th and 14th Amendment rights of due process.

168.    Judge McCraw's appointment of Rhonda Childress as Receiver was unlawful after an order to STAY was granted.  Ms. Childress didn't hesitate to quickly seize and attempt to dispose of Plaintiff's property. Ms. Childress immediately appointed herself as Sellers Agent Realtor.    She was made aware of the STAY Pending Appeal yet proceeded forcefully.

## COUNT II AGAINST RHONDA CHILDRESS HERRES
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

169.    As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

170.    Plaintiff leverages Title 42 United States Code 1985 Conspiracy to Interfere with Civil Rights and the 9th Amendment as a guideline for the following offenses:

171.    Ms. Herres, in conspiracy with others, made several efforts to kick Plaintiff out of her residence again and again. At one point Ms. Herres threatened to remove Plaintiff physically and did follow through by breaking in while Plaintiff was inhabiting the property.  Plaintiff called the police multiple times on Ms. Herres who sought to bully Plaintiff with unlawfully seizure, harassment, and threats. Ms. Herres proved to be as aggressive, threatening, and as lawless as Mr. Penfold.  Ms. Herres worked closely with Dahlheimer to threatened Plaintiff. At

one point they both showed up with other people. Cars crowded around Plaintiff's cul de sac. Police had to remove them.

172. Herres is also guilty for the alarming perjury in the state court to impeded justice for Plaintiff. Herres's behavior should be considered criminal.

## **COUNT III AGAINST RHONDA CHILDRESS HERRES**
## **UNLAWFUL SEIZURE OF PROPERTY**

173. As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

174. Plaintiff leverages the 4th and 5th Amendments and 28 U.S. Code § 1356 - Seizures not within admiralty and maritime jurisdiction, 28 U.S. Code § 1343 - Civil rights and elective franchise as constitutional causes for Herres intentional and willful unlawful seizure of Plaintiff's property.

175. While a STAY was in place, Herres, whose duties should have ceased, stepped outside of her duties and unlawfully threatened and in seized Plaintiff's property. Herres damaged cameras and the alarm system to break in. Alarm window contacts on 14 windows were destroyed for future entry break-ins.

176. Herres is responsible for the seizure of the marital residence which was sold under market (under $60,000.00). Proceeds that were awarded to Plaintiff by McCraw's court order have further been seized unlawfully.

177. Ms. Herres should be held responsible for intentional infliction of emotional distress, unlawful attempt to break into Plaintiff's property, unlawful attempt to steal equity in collusion

with Mr. Dahlheimer, interference with prospective economic advantage, violating her

constitutional rights with criminal intentions, and obstruction of justice.

## Lester John Dahlheimer Jr.

178. Under 28 U.S. Code § 1367 - Supplemental jurisdiction Plaintiff brings this

lawsuit against Lester John Dahlheimer Jr. The above officials(McCraw, Evans, Willis,

Penfold, Herres) would not have offended, covered up, or been in conspiracy of any kind

without the wealthy offerings of Dahlheimer and his criminal endeavors.

## COUNT I AGAINST LESTER JOHN DAHLHEIMER JR.
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

179. As described more fully above, Plaintiff incorporates and restates each of the above

paragraphs as if fully set forth herein.

180. Through Supplemental Jurisdiction Plaintiff leveraged Plaintiff complains violations

under Title 42 United States Code 1985 Conspiracy to Interfere with Civil Rights and the 9th

Amendment.

181. Dahlheimer had engaged in many criminal offenses of fraud and forgery for which

should have been litigated in the state court, but was thwarted at every juncture. In his effort to

obstruct justice(and was successful in collusion with others) Dahlheimer profusely perjured

himself on the stand and filed volumes of motions full of false allegations, presented fraud in the

court, and thrusted demands to incarcerate Plaintiff for the effect of threatening Plaintiff.

Dahlheimer consistently willfully oppressed Plaintiff. Dahlheimer vandalized Plaintiff's home,

stalked Plaintiff, retained people to threaten Plaintiff in his behalf, and invaded her car(have camera footage).

182. Dahlheimer, in conspiracy with others, should be held responsible for fraud, forgery, unlawful threats to keep quiet, soliciting public servants to threaten Plaintiff into submission, and unlawful seizure of Plaintiff's assets. Dahlheimer should also be held responsible for intentional infliction of emotional distress, tortious interference with prospective economic advantage, and obstruction of justice.

## COUNT II AGAINST LESTER JOHN DAHLHEIMER JR.
## UNLAWFUL SEIZURE OF PROPERTY

183. As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

184. Plaintiff leverages the 4th and 5th Amendments and 28 U.S. Code § 1356 - Seizures not within admiralty and maritime jurisdiction, 28 U.S. Code § 1343 - Civil rights and elective franchise.

185. Dahlheimer , in collusion with others, willfully and intentionally, deeded property(in Georgia) to himself belonging to Plaintiff, forged Plaintiff's name on financial transactions to steal equity from Plaintiff's property in Georgia, ordered checks of Plaintiff's vested stock and forged her name on the checks stealing the funds, forging Plaintiff's name on insurance proceeds belonging to the Plano property and unlawfully seized Plaintiff's property in Plano entirely(financially and physically). Plaintiff received no proceeds after the sale of the property for which she was awarded.

## COUNT III AGAINST LESTER JOHN DAHLHEIMER JR.
## FRAUDULENT CONCEALMENT

186.     As described more fully above, Plaintiff incorporates and restates each of the above

paragraphs as if fully set forth herein.

187.     Lester John Dahlheimer Jr. actively fraudulently concealed the forged documents on

deeds, checks, contracts to steal Plaintiff's properties.

188.     In collusion with others Dahlheimer actively concealed the fraud on the court.

## Lester John Dahlheimer Sr. ESTATE

189.     Under 28 U.S. Code § 1367 - Supplemental jurisdiction.  Plaintiff brings this lawsuit

against Lester John Dahlheimer Sr.'s estate.

## COUNT I AGAINST LESTER JOHN DAHLHEIMER SR.
## UNLAWFUL SEIZURE OF PROPERTY

190.     As described more fully above, Plaintiff incorporates and restates each of the above

paragraphs as if fully set forth herein.

191.     Plaintiff leverages the 4th and 5th Amendments and 28 U.S. Code § 1356 - Seizures not

within admiralty and maritime jurisdiction, 28 U.S. Code § 1343 - Civil rights and elective

franchise.

192.     There is indisputable evidence Lester John Dahlheimer Sr., Elizabeth

Dahlheimer(Executrix), and Lester John Dahlheimer Jr.  were involved in the embezzlement of

property from Plaintiff. It is also indisputable that LJD Sr.'s estate assets that were used as collateral to steal the property. Lester John Dahlheimer Jr. signed the documents of embezzlement.

193. A deed transfer was discovered where Lester John Dahlheimer Jr. deeded Plaintiff's property to himself by forging Plaintiffs name, then Lester John Dahlheimer Jr. deeded the property to Lester John Dahlheimer Sr. A Cancellation of deed from Lester John Dahlheimer Sr. was executed after the sale of the property by Plaintiff who had no knowledge of the deed transfers or financial transaction.

194. Lester John Dahlheimer Jr. has access, possesses, and is the heir to half of Lester John Dahlheimer Sr.'s estate. Lester John Dahlheimer Sr., his estate, have liability for the unlawful seizure of Plaintiff property.

## COUNT III AGAINST LESTER JOHN DAHLHEIMER SR. FRAUDULENT CONCEALMENT

195. As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

196. Lester John Dahlheimer Sr., in conspiracy with others, actively fraudulently concealed the forged documents on deeds, checks, contracts to steal Plaintiff's properties.

### Paulette Mueller, UNDERWOOD PERKINS, Attorney for Lester John Dahlheimer Jr.

197. Under 28 U.S. Code § 1367 - Supplemental jurisdiction Plaintiff brings this lawsuit against Paulette Mueller. The above officials(McCraw, Evans, Willis, Penfold, Herres and Dahlheimer) would not have offended, covered up, or been in conspiracy of any kind without the infrastructure of Mueller dictatorship for which she engaged in the commission of many criminal acts with others.

## COUNT I AGAINST PAULETTE MUELLER
## VIOLATION OF DUE PROCESS

198. As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

199. Paulette Mueller has violated Plaintiffs 5th and 14th Amendment rights of due process.

200. Mueller was the chief principal in the offenses committed by the Defendants who are officials. Mueller worked in collusion with the officials engaging and retaining them to obstruct justice, abuse the law, assist in the execution fraud on the court, and threaten Plaintiff. It was Mueller who wrote and filed all Dahlheimer's perjury, actively lead him to perjury on the stand in court, filed frivolous motions to unlawfully incarcerate, filed frivolous and vexatious motions to threaten, and presented fraudulent exhibits. Mueller purposely filed late notices for hearings and demanded short notice to Plaintiff to impede Plaintiff's ability to retain counsel. Mueller was instrumental in convincing McCraw into having hearings without notifying Plaintiff at all.

201. Mueller harassed Plaintiff's attorneys until the liability became a risk.

202. Mueller tampered with governmental records while Plaintiff was on the stand and obstructed exhibits from being tendered. Mueller tendered her own exhibits into the record that were not authenticated.

## COUNT II AGAINST PAULETTE MUELLER
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

203.    As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

204.    Plaintiff leverages Title 42 United States Code 1985 Conspiracy to Interfere with Civil Rights and the 9th Amendment as a guideline for the following offenses:

205.    Ms. Mueller was provided with documentation of Plaintiff's proof of ownership of the Plano property and Mueller lost in a summary judgement over Plaintiff's ownership of the property and her right to defend it. However, Mueller endeavored to fraudulently take it from Plaintiff and did successfully.

206.    Mueller was also ownership of the Georgia property, and provided the business affidavits of Mr. Dahlheimer's criminal transactions associated with both properties.

207.    Ms. Mueller was provided with historical records of Mr. Dahlheimer's violence/arrests/admittances. Ms. Mueller was provided with approx. 10 years of marital tax returns, W-2's of each spouse exposing the underemployment of her client, $139,000.00 of Mr. Dahlheimer's legal custody suit bills/payment, child support and expenses. Ms. Mueller had direct evidence of Mr. Dahlheimer's breach of fiduciary obligations of refusal to support his legal issues, refusal to support the community, refusal to support his premarital obligations to support his son from a previous marriage while having access to his multimillion-dollar estate. This left it up to Plaintiff to pay Mr. Dahlheimer's mounting debt during the marriage. To this day Plaintiff has not litigated any of the above in any court.

208. Mueller obstructed Plaintiff at every juncture and acted in collusion with her client to successfully threaten Plaintiff and assist in stealing Plaintiff's current property and actively endeavored to assist in successfully obstructing litigation for the previous embezzlement of previous property.

209. Mueller's actions in violating due process(in COUNT I), not to be repeated here, obstructed Plaintiff's right for a fair and just tribunal. Mueller actively interfered with Judges, Receivers, and attorneys. There is evidence of ex parte communication with Judges and evidence she was involved in the meddling of Plaintiff's car.

210. Mueller filed volumes of frivolous pleadings of serious false accusations to clog up the court and oppress the Plaintiff to defend conceal Mr. Dahlheimer's fiduciary breach, fraud, forgery, and violence and threats.

211. Mueller should also be held accountable for defamation of Plaintiff to others(including other attorneys), intentional infliction of emotional distress, malicious prosecution, tortious interference with prospective economic advantage, and obstruction of justice.

## **COUNT III AGAINST PAULETTE MUELLER.**
## **UNLAWFUL SEIZURE OF PROPERTY**

212. As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

213. Plaintiff leverages the 4th and 5th Amendments and 28 U.S. Code § 1356 - Seizures not within admiralty and maritime jurisdiction, 28 U.S. Code § 1343 - Civil rights and elective franchise.

214. Ms. Mueller is guilty of acting in the commission of fraud on the court and actively participated in the illegal seizure of Plaintiff's past and present property. Mueller knew of the unlawful seizure of Plaintiff's Georgia property and actively obstructed Plaintiff's remedy of redress.

215. Mueller participated in the criminal illegal seizure/theft of Plaintiff's current properties/assets(not just real property), participated in the fraud on the court, actively covered Mr. Dahlheimer's criminal actions by actively threatening Plaintiff with knowingly defaming false accusations in pleading after pleading providing no evidence

216. In the sale of the current Plano property Mueller presented fraudulent closing documents to the court of the sale, boldfaced lied to the court about handing Plaintiff accurate documents in front of the Judge, and directed Herres to successfully give over the property to Dahlheimer, take 66,000.00 of escrow, and take/keep the proceeds from the sale instead of distributing to Plaintiff. It is unknown the split of the proceeds as of this day.

## COUNT IV AGAINST PAULETTE MUELLER. FRUADULENT CONCEALMENT

217. As described more fully above, Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

218. Paulette Mueller actively fraudulently concealed criminal acts in collusion with her client of forged documents on deeds, checks, contracts to steal Plaintiff's properties.

219. Paulette Mueller, in collusion with others, actively fraudulently concealed fraud on the Trial court and the Appellate Court.

## SUPPORTING AUTHORITIES

### LIABILITITES AND LACK OF JUDICIAL IMMUNITY

220.    Under Title 42 United States Code 1983 Civil Action for Deprivation of Rights

Plaintiff applies the below to both Judge McCraw, Judge Evans, the Fifth District Court

of Appeals, and Greg Willis:

To establish a claim under 42 U.S.C. § 1983, a plaintiff must plead and prove two
elements: (1) that there was a deprivation of a right secured by the Constitution or laws of
the United States, and (2) that the deprivation was caused by a person acting under color
of state law. See Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)

AND

"The Supreme Court has held that absolute judicial immunity is overcome "in only two
sets of circumstances." Mireles v. Waco, 502 U.S. 9, 11-12 (1991). First, a judge is not
immune for non-judicial actions, i.e., actions not taken in a judicial capacity. Second, a
judge is not immune for actions, although judicial in nature, done in complete absence of
all jurisdiction".

In addition, Plaintiff applies the following:

"If, after jurisdiction attaches in an appellate court, the filing of a notice of appeal by any
party invokes the appellate court's jurisdiction over all parties to the trial court's
judgment or order appealed from". *TRAP 25.1.(b) Jurisdiction of Appellate Court.*
When a Notice of Appeal is filed, the trial court loses jurisdiction to do anything with the
case that would affect the judgment until determination of the appeal". *People v. Perez
(1979) 23 C[al].3d 545, 554 [153 Cal. Rptr. 40, 591 P.2d 63].* "Therefore, this Court is
without jurisdiction to modify the sentence, or to address issues which are properly
before the Appellate Court".

221. **Judge McCraw lacks immunity:** Plaintiff filed an appeal 10/11/2016 challenging two

orders of sanctions, protection orders lacking requirements, two recusals(appointing her own

judge), refusing to reduce oral rulings to a written order, holding several hearings/Trials without notifying Plaintiff including a Recusal and the Divorce bench trial, and challenged all items in the default Divorce Decree(Receiver, sale of home, all division of property, etc.).

222. After being commanded by the Appellate Court to hear Plaintiff's Emergency Motion to Stay Pending Appeal(previously McCraw refused), Plaintiff was GRANTED the STAY Pending Appeal 12/15/2016.

223. On 3/2017 Judge McCraw, stepped outside her jurisdiction, and re-issued same orders as in the Divorce decree(2nd time) appointing another Receiver and forcing the sale of Plaintiff's property. Again, outside her jurisdiction, in June of 2017 Judge McCraw further ordered an Ex Parte TRO to immediately kick out Plaintiff from her home and dispose of the property. TRO's aren't even legal in the state of Texas for an owner of a property living in the property which is clearly violates established law. Judge McCraw has acted in the complete absence of subject matter jurisdiction; *Rankin v. Howard, 633 F.2d 844 (1980)*, *Stump v. Sparkman, 435 U.S. 349 (1978)*.

224. Considering Judge McCraw's other actions in depriving Plaintiff's constitutional rights: Soliciting her own Recusal Judges, tampering with evidence at a hearing in collusion with Ms. Mueller, directing the clerks of the court to deny setting hearings, purposely holding hearings where Plaintiff was not notified(default judgements Divorce and Recusal without redress and issuing sanctions), Ex-Parte TRO for immediate kickout(if it were legal in Texas this would be a judicial act, but it's not legal in Texas), verbally shutting Plaintiff down while presenting evidence(like a school teacher), refusing to allow ownership/financials/protection evidence into court, issuing time limits constraints upon Plaintiff to present. making oral rulings on pleadings

and refusing to reduce them to written orders, ruling on pleadings never heard, refusing to obey

her own orders(STAY granted) with another order for Receiver and disposal of Plaintiff's

property illegally seizing of property.

225. McCraw, with intention, perverted the law in her courtroom by grossly violating clearly

established law throughout a long course of litigation. The damages to Plaintiff cannot be

enumerated as the volume is countless.

226. **Judge Evan**'s complete lack of jurisdiction and judicial function. Applying the above

and the following:

> *Mireles v. Waco, 502 U.S. 9,12 (1991).* See also *Dawson v. Newman, 419 F.3d 656, 661*
> *(7th Cir. 2005)* (three factors generally govern the determination of whether a particular
> act or omission is entitled to judicial immunity: '(1) whether the act or decision involves
> the exercise of discretion or judgment, or is rather a ministerial act which might as well
> have been committed to a private person as to a judge; (2) whether the act is normally
> performed by a judge; and (3) the expectations of the parties, i.e., whether the parties
> dealt with the judge as judge.'") (quoting *Lowe v. Letsinger, 772 F.2d 308, 312 (7th Cir.*
> *1985)*)

227.     Judge Evans lacked jurisdiction or right of discretion to determine whether the

Appellate records should or should not be corrected. Correcting the record is a function of

the clerk of the court, ministerial/administrative, and not a judicial function. Judge Evans

fails all factors above and had no jurisdiction to interfere with such function. Judge Evans

had an incentive to participate in the disappearance of these records. Whether intentional or

not he is in collusion with Lisa Matz of the Fifth District Court of Appeals Clerk in asserting

the records did not exist.

228.     An appellant is entitled to a new trial if, through no fault of the appellant, a

reporter's record is lost or destroyed, and the portion lost or destroyed is necessary to the

resolution of the appeal and cannot be replaced by agreement of the parties.   Tex. R. App. P.

34.6(f); Mendoza v. State, 439 S.W.3d 564, 566 (Tex.App.– Amarillo 2014, no pet.);
Castillo v. State, No. 01–13–00632–CR, 2015 WL 1778776, at *2 (Tex.App.–Houston [1st
Dist.] April 16, 2015, no pet.).

229.       Evans violated clearly established law by knowing the records has disappeared,
refused to act by ordering the correction, and his refusal to modify his opinion.  His actions
severely violated due process and obstructed Plaintiffs constitutional right to appeal with the
Appellate Brief and Rehearing anesthetized by the disappearance of the clerk records.

230.       **Lisa Matz Fifth District Court of Appeals Clerk of the Court** knew of the
removed records, refused to correct them, and thus indirectly denied Plaintiff her
constitutional right for Rehearing.  The Fifth District Court of Appeals Clerk of the Court has
two responsibilities that are relative:  1) TRAP 34.5(f) inspect transferred records to the
designation documents and safekeeping  2) TRAP 34.5 (d) and (e) correct the record.  The
clerks have no decisions outside of these rules and procedures.  Plaintiff's motioned the court
and made a direct request which was ignored by the Clerk's office.  Plaintiff's claim against
the Lisa Matz of the 5th District COA clerk's office is they assisted(or are in collusion
willingly) in tampering with evidence and violated due process.

231.       Their duty is not for discretion of the judiciary.  Discretion of this task is not
available to the Fifth District Court of Appeals. Clerk of the Court.  The Texas Rules of
Appellate procedure are written for all appellate courts in Texas to preserve a fair and just
tribunal.  The Fifth District COA was obligated to correct the record.  A judiciary(Evans)
directing them to decline should have been ignored.

## LIABILITIES AND LACK OF PROSECUTORIAL IMMUNITY

232.    **District Attorney Greg Willis**:  In his case Plaintiff is still applying Title 42 United States Code 1983; Like judicial immunity, prosecutorial immunity is functional; it attaches only to acts intimately related to the initiation and prosecution of a criminal case.  District Attorney Greg Willis's actions to send an unsuspecting(non-charging) to Plaintiff to appear, then falsely accuse the Plaintiff of a felony does not even closely mimic "initiation and prosecution" of a case.  Mr. Willis is afforded qualified immunity only.

233.    In *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).The Court of Appeals ruled that prosecutors are entitled to absolute immunity when out-of-court acts cause injury only to the extent a case proceeds in court, but are entitled only to qualified immunity if the constitutional wrong is complete before the case begins.

234.    In falsely accusing Plaintiff of stealing Mr. Dahlheimer's gun there was obviously no initiation, investigation since ownership was not in question, no law enforcement involved, no case or charges filed prior to inviting Plaintiff to appear without telling her of the subject matter at hand.  If this move was in an investigative mode Willis is not advocating prosecution, but investigation.  Therefore, he has no immunity.

235.    Willis's threat to incarcerate her before a case began was a force of some extrajudicial influence to frighten her upon the sunset of Judge McCraw's recusal hearing.  This is a constitutional wrong before the case begins.

236.    Add to the DA's offense the expungement of an arrest of a proven stalking perpetrator, Mr. Dahlheimer, who was justly arrested for violating the protection order, an order protecting Plaintiff.

237. Greg Willis directly conspired, OR he failed to adequately train line prosecutors on their duties to due process and state laws on expungement *Van de Kamp v. Goldstein* and prosecutions.

238. The District Attorney's actions meet all four elements for Malicious Prosecution.

## LIABILITIES FOR OFFICERS OF THE COURT AND CIVIL INDIVIDUALS

239. Owen v. Independence, 100 S.C.T. 1398, 445 US 622 "Officers of the court have no immunity, when violating a Constitutional right, from liability. For they are deemed to know the law!

240. *United States v. Price* (1966) was a § 242 prosecution, The Court reversed dismissal of the § 242 charges against the 15 private individuals. The joint conspiracy between private actors and government officials (themselves unquestionably acting under color of state law under *Screws*) made the private individuals "willful participant[s]" in joint activity. The "brutal joint adventure was made possible by state detention and calculated release of the prisoners by an officer of the State." It was part of a "monstrous design," a "joint activity from start to finish." Private actors who "took.

241. *Lugar v. Edmondson Oil* (1982), *Lugar* announced a two-step inquiry to decide whether a defendant is a person subject to a § 1983 suit:

First, the deprivation [of a federal right] must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

Plaintiff's Second Amended Complaint                    Page **47** of **53**

The two steps converge when a claim is directed against an officer who brings the force and weight of the state and his public office into his conduct. They diverge when the defendant, although a formally private actor, is subject to some control or influence by government and government officers. Courts often treat the constitutional and statutory requirements as identical inquiries. As a default rule, the former establishes the latter — that is, a person who is a constitutional state actor acts under color of state law. (*Lugar*)

242. **Paulette Mueller**: On record, Paulette Mueller, attorney for Mr. Dahlheimer, played tag team with Judge McCraw on many occasions. Others in court detected it. There are many reporters records which establish the Judge and Ms. Mueller constructed several unlawful games for which obstructed Plaintiff from being heard and submitting evidence. Judge McCraw and Ms. Mueller's scheme of tampering with Plaintiff's evidence had strategy and design.

243. Ms. Mueller was given discovery of her client's embezzlement of Plaintiff's properties and the many counts of forgery stealing assets. Ms. Mueller knew of the fraud and forgery. Knowing she had no case, she moved to conceal the criminal offenses conspiring with others. Ms. Mueller trumped up volumes of no-evidence lies, viciously defaming Plaintiff, for which Judge McCraw participated in prosecuting Plaintiff unjustly. Ms. Mueller's privilege and immunity are lost if she participated in her client's commission of fraud.

"The crime-fraud exception can render the privilege moot when communications between an attorney and client are themselves used to further a crime, tort, or fraud. In *Clark v. United States*, the US Supreme Court stated that "A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told".*Clark v. United States*, 289 U.S. 1, 15 (1933)

244. Ms. Mueller was instrumental with Judge McCraw in having hearings for which Plaintiff was omitted from appearing via notification. Ms. Mueller in collusion with Mr. Dahlheimer and

Plaintiff's Second Amended Complaint                                    Page **48** of **53**

Judge McCraw unlawfully seized Plaintiff's assets and restricted her from her bank accounts for use of hiring adequate counsel to protect her rights.

245. **Rhonda Childress** and **Craig Penfold** were appointed Receivers and deemed officers of the court. Both, in collusion with the court and other solicited helpers, stepped outside of their duties and jurisdiction to unlawfully seize, gouge, dispose of Plaintiff's property, and threatening her with bodily harm and incarceration.

246. **Mr. Lester Dahlheimer Jr**. is the glue of wealth in collusion with Judge McCraw, Paulette Mueller, Greg Willis, Judge Evans, Lisa Matz of the Fifth District Clerk of the Court, Rhonda Childress, and Craig Penfold(Chicago Title). He solicitated public servants to conceal his criminal offenses, encumber Plaintiffs property, and threaten Plaintiff into surrender. They all violated their oaths to the state court. The more Plaintiff challenged the court, the more defendant's actions moved into violating themes. Mr. Dahlheimer, in collusion with Ms. Mueller and Judge McCraw embezzled, unlawfully seized, Plaintiff's assets, forged her name on multiple financial instruments(Real Estate contracts, financial transactions, checks(proceeds and cashed out stock) and brutally threatened Plaintiff using Craig Penfold, Rhonda Childress, Larry Petr, and unidentified Plano Police officers. The more these parties violated constitutional rights, the more each of them covered up for each other.

247. **Lester John Dahlheimer Sr**. actively concealed from Plaintiff the forged documents of deed transfers and financial equity siphoning. Elizabeth Dahlheimer facilitated transactions between LJD Jr. and LJD Sr. as evident of the deed cancellation of Plaintiff's property was enveloped with a notation in her indisputable distinct writing. From 2005 until discovery in 2016 the Dahlheimers kept their silence

## CONCLUSION

248.    If the State is in collusion with these constitutional offenses and these actors, then

this opens wide the door for federal question 28 U.S.C. 1331. Code § 1367 -

Supplemental jurisdiction can and should be applied where proper.

## RELIEF SOUGHT

249.    Assuming Plaintiff will be relinquishing her property per the Divorce Decree

Order, damages requested paid by Lester John Dahlheimer:  Also issue a Protection

Order of Wanda L. Bowling against Dahlheimer for life.

| Plaintiff's separate property: **130 Chessington Dr., Alpharetta, GA purchased in 1991** | |
|---|---|
| Lack of redress: Missing equity in separate property: forgery /fraud-Compensatory | $90,000.00 |
| Property: **4517 Hallmark Dr. Plano, TX** | |
| Lack of redress: Separate property down payment - Compensatory | $88,000.00 |
| Lack of redress: Fair compensation of earned equity and monetary improvements on property - Compensatory | $110,000.00 |
| Lack of redress: Damages lost in court due to forged "AS IS" contract - Compensatory | $70,000.00 |
| | |
| General damages-emotional distress-attorneys fees | Court discretion |
| Punitive damages: forgery and fraud, | Court discretion |

250.    Lester John Dahlheimer, Sr. estate (Executrix Elizabeth Dahlheimer):  Damages

requested are punitive damages for the commission of fraud with Lester John Dahlheimer

Jr. Amount requested is left to the court's discretion.

251.    Paulette Mueller:  Special Damages requested and for punitive damages.

Injunctive relief issued preventing Ms. Mueller or associated from further actions against

Plaintiff. A Protection Order in behalf of Wanda L. Bowling against Paulette Mueller.

The amount requested is left to the court's discretion.

252.     Judge Piper McCraw: Plaintiff prays for Declaratory Relief, Injunctive, and Order

damages of punitive including emotional distress. The amount requested is left to the

court's discretion.

253.     Order Craig A. Penfold to pay for property damages relating to his effort to

gouge. Mr. Penfold can gather for himself all the missing proceeds issued from Travelers

Insurance for reimbursement as he was the Receiver during the time insurance checks

were issued.

| Damages during Receivership | |
|---|---|
| Damages to property | $80,000.00 |
| *Proceeds due for designer roof | $87,000.00 |
| Attorney's fees defending sales fraud effort | $5,000.00 |
| General damages(emotional distress) | Court discretion |
| Punitive damages | Court discretion |

254.     Judge David Evans: Plaintiff prays for Declaratory Relief, Injunctive, and Order

damages punitive and compensatory. The amount requested is left to the court's

discretion.

255.     Order damages from Lisa Matz Clerk of the Court – Fifth District Court of

Appeals punitive and compensatory damages.

256.     Greg Willis: Plaintiff prays for Declaratory Relief and to pay punitive and

compensatory damages.  Issue a Protection Order from any further no evidence

prosecution. Declaratory Relief.

257.    Order damages from Rhonda Childress punitive and general damages.

258.    Plaintiff leaves it to the court to grant further relief for the intentional infliction of

emotional distress, post judgment interests, and any special damages as the Court deems

appropriate.

Respectfully submitted,

Wanda Bowling
4282 Duck Creek, #101
Garland, Texas 75043
770 335-2539
wldahlheimer@gmail.com

## AFFIDAVIT OF WANDA BOWLING IN SUPPORT OF
## PLAINTIFFS SECOND AMENDED COMPLAINT

THE STATE OF TEXAS COUNTY OF COLLIN

BEFORE ME, the undersigned authority, on this day personally appeared Wanda Lee

Bowling, who swore or affirmed to tell truth, and stated as follows: 1. My name is Wanda Lee

Bowling and I am over Twenty-One (21) years of age. 2. I have made this Affidavit in support of

this Plaintiffs Second Amended Complaint.   3.  I am competent in all respects and I am not

suffering from any disabilities.  4.  The facts in this Plaintiffs Second Amended Complaint are

within my personal knowledge herein and know them to be true.

Respectfully submitted,

Wanda Bowling
4282 Duck Creek, #101
Garland, Texas  75043
770 335-2539
wldahlheimer@gmail.com

State of Texas County of Collin

SWORN to and SUBSCRIBED before me, the undersigned authority, on

the _16_ day of _September_ , _2019_ year, by Wanda Bowling.

MATTHEW C. OWENS
Notary Public, State of Texas
Comm. Expires 08-27-2022
Notary ID 125728578

_125728578_
Seal and Commission Expiration

Notary Public

Plaintiff's Second Amended Complaint                    Page **53** of **53**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been

forwarded by first class mail or efiled to each attorney/party of record on this date  9  / 16  /2019.

Wanda Bowling
4282 Duck Creek, #101
Garland, Texas  75043
770 335-2539
wldahlheimer@gmail.com

**Paulette Mueller**
5420 LBJ Freeway, Suite 1900
Two Lincoln Centre
Dallas, Texas 75240
Tel: (972) 661-5114 Fax: (972) 661-5691
State Bar No. 14624300
email: pmueller@uplawtx.com
Attorney for Appellee, Lester J. Dahlheimer, Jr
And Paulette Mueller

**Scot MacDonal Graydon**
OAG of Texas
300 W. 15th Street
Austin, Texas  78701
Tel (512) 463-2120
Dallas, Texas  75202
Tel (214) 712-3400
Attorney for Piper McCraw
        David Evans
        Clerk of the Court

**Corbet Bryant,** cbryant@ccsb.com
**Kelli Hinsin,** khinson@ccsb.com
CARRINGTON, COLEMAN,
SLOMAN & BLUMENTHAL**,**
901 Main St., Suite 5500
Dallas, Texas  75202
Tel. 214/855-3000
Fax 214/855-1333
Attorneys for Craig Penfold

**Robert Davis**
MATTHEWS, SHIELS, KNOTT,
EDEN, DAVIS & BEANLAND
8131 LBJ Freeway, #700
Dallas, Texas 75251
Tel. 972/234-3400
Fax 972/234-1750
Attorney for Greg Willis

**David Vassar**
NESBIT, VASSAR, & MCCOWN
15851 Dallas Parkway, #800
Addison, Texas 75001
Tel: (972) 371-2411
Fax (972 371-2410
State Bar No. 20503175

**Robert M. Nicoud, Jr.**
NICOUD LAW
10440 n. Central Expressway #800
Dallas, Texas 75231
Tel (214) 540-7542
 Fax (214) 265-6501
rmnicoud@dallas-law.com
SBN 15017900